SOMMERVILLE, J.
Plaintiff declares upon a contract of agency with the defendant company, which is now in liquidation, and it impleads it through its receiver, together with the directors of said company, and asks for an accounting and a judgment in solido against them in the sum of about $12,000.
The defendant company, through its receiver, and the several members of the board of directors, answered the petition of plaintiff, denying all the allegations therein contained.
There was judgment in favor of plaintiff, or rather in favor of the receiver of plaintiff, which company went into the hands of a receiver since the filing of this suit, and against the defendant company. There was further judgment in favor of the members of the board of directors of said defendant company, namely, Theodore J. Lala, Frank Frey, S. La Nasa, Joseph Cangelosi, and William J. Salter, dismissing plaintiff’s petition as to them.
The Lala Ferreras Company has not appealed.
. S. La Nasa has not appeared through counsel in this court.
The record shows that N. Frey, Limited, intervened in this suit. As this intervention was not put at issue by plaintiff, it is not before the court.
On motion to dismiss: Theodore J. Lala, Frank Frey, and William J. Salter, appellees, *427 allege that all the right, title, and interest of ■ the plaintiff and appellant in and to this suit have been sold and adjudicated, in the receivership proceedings of the plaintiff, to the Bluefields Fruit & Steamship Company, and that plaintiff has no further interest herein; they move for the dismissal of the appeal.
The day following the filing of said motion to dismiss the appeal, when the case was called for trial, the Bluefields Fruit & Steamship Company, alleging that it had acquired all the rights and interests of the Bluefields Steamship Company, Limited, in and to the suit, moved the court that it be substituted as plaintiff and appellant.
The motion to dismiss is denied.
■ On motion to remand: Thereupon the
three above-named appellees, alleging that the Bluefields Fruit & Steamship Company had bought a litigious right, without having disclosed the real price paid by it for said right, and that they (appellees) had the right to elect and decide whether they would pay the real price of the transfer of the said' litigious right to the purchaser, with interest, in accordance with article 2652 of the Civil Code, moved that this case be remanded for the purpose of ascertaining the purchase price of said litigious right.
Appellees attached to their motion to dismiss the appeal a copy of the act of sale by the receiver of plaintiff company, of the property belonging to the plaintiff, to the Blue-fields Fruit & Steamship Company. That act of sale shows that the receiver of said company sold all of the franchises, rights, assets, credits, and property, real estate and personal, including the rights of said company in and to this lawsuit, as one parcel, and as a going concern, to the Bluefields Fruit & Steamship Company, for $160,000; and that some 92 different items, including several plantations, houses, lands, and assets of other descriptions, were sold without any estimate as to the value of any one item.
[1] Article 2653 of the Civil Code defines a “litigious right” as follows:
“A right is said to be litigious, whenever there exists a suit and contestation on the same.”
And article 2652 provides that:
“He against whom a litigious right has been transferred, may get himself released by paying to the transferee the real price for the transfer, together with the interest from its date.”
[2] The provisions of article 2652 are found under chapter 12 of the Code treating of “Sale,” and is entitled, “Of the assignment or transfer of credits and other incorporeal rights.” That article has reference to conventional sales.
In Early v. Black, 12 La. 205, we say, with reference to article 2622 (now 2652 of the Civil Code):
“The transfer spoken of in that article was a conventional assignment, between individuals capable of contracting. The defendant, in the rule holds judgment by a different title; an adjudication by a public officer, at a forced sale, made by order of a competent tribunal; by this adjudication, all the rights and claims of the plaintiff in the suit, by virtue of the judgment against Early and Amelung, were vested in Black.”
And, again, in Succession of Tilghman, 7 Rob. 387, we hold that article 2622 (now 2652) of the Code relates only to conventional assignments, and not to a transfer which results from a sheriff’s sale under execution.
See, also, D’Apremont v. Berry, 6 La. Ann. 464, and Lane v. Cameron, 36 La. Ann. 773, 778.
[3] The sale in this case was a judicial sale, made by the receiver appointed by a competent court for the express purpose of executing its orders in the receivership proceedings of the plaintiff company, and the sale made by him was made under an order of that court. The above authorities are decisive of -the point that article 2652 of the Civil Code, has no application to a judicial sale of a litigious right.
*429 Appellees argue that the Bluefields Steamship Company, plaintiff, intervened in the act of sale made hy the receiver, and thereby made the sale a conventional act on the part of the owner of the claim. But the acts of an interested party cannot change the nature of a judicial sale. Sales by order of a competent court are not conventional, but judicial. Succession of Yon Hoven, 48 La. Ann. 620, 19 South. 766.
. It appears from the act of sale referred to that the judge having jurisdiction over the receivership of the plaintiff company specially ordered that that company should intervene in the act of sale, to join in said deed and title, and to specially ratify and approve the same; and to transfer, convey, assign, abandon, and set over to the Bluefields Fruit & Steamship Company, the purchaser, all the property of the Bluefields Steamship Company, Limited, which was adjudicated to the purchaser.
The motion to remand is denied.
On the merits:
[4] Plaintiff, we have seen, declares upon a written contract of agency, and attaches said contract to its petition, making it a part thereof.
The defendants, the members of the board of directors of the defendant company, under their general denial, argue that the written contract attached to plaintiff’s petition was a partnership contract, and urge that the same is ultra vires of the two corporations, and therefore null and void; and they ask that plaintiff’s suit be dismissed.
The contract entered into between the two companies, plaintiff and defendant, stipulates that the defendant company shall send two vessels to the port of Bluefields, Nicaragua, to be loaded with bananas for the account of the Bluefields Steamship Company. Plaintiff therein bound itself to load the vessels and to pay each and every expense attached thereto to Bluefields and return, as well as any expense of whatever nature which might be incurred for the unloading in New Orleans, and in the sale of the bananas which were to be loaded on said vessels. It was further agreed that said cargoes, “for the account of the Bluefields Steamship Company shall be exclusively handled and sold by the Lala-Ferreras-Cangelosi Steamship Company, upon their arrival in New Orleans.” It was further agreed that the defendant company was to receive a commission of 5 per cent, on the gross amount of the cargoes; and that said commission and the expenses incurred in unloading and selling the cargoes were to be deducted from the gross amount of sales ; and, if any profits were shown, the said profits were to be divided share and share alike. The plaintiff company guaranteed the defendant company against “any loss of whatever nature which may be incurred under this agreement, and bind themselves to pay said loss, if any,” etc.
The only clause in the agreement referred to which suggests a partnership is that wherein it is provided that, after defendant company has received its commission and all the expenses have been paid, the profit, if any, “shall be divided share and share alike.” But, in determining the nature of this agreement, all of its terms must be considered, and one condition or circumstance of the contract will not have the effect of determining -the nature of said contract. The cargoes of the two vessels referred to in the contract were the exclusive property of plaintiff, were loaded on two of defendants’ vessels at the expense of plaintiff, and were unloaded in New Orleans at plaintiff’s expense; and plaintiff agreed to pay defendant company 5 per cent, commissions for the handling and sale of said cargoes, and, after all of said expenses had been paid, to divide the profits, if any, between the parties to this contract. It was twice declared in the agreement between the parties that the defendant' was to load the *431 two vessels “with bananas for the account of the Bluefields Steamship Company,” and that defendant company “should sell the cargoes for the account of the Bluefields Steamship Company.” This is a clear contract of employment or agency by the plaintiff company of the defendant company for a certain definite purpose, and for a limited time.
It is quite evident that the parties, plaintiff and defendant corporations, did not contemplate forming a partnership; it would have been contrary to their charters; and the terms of the agreement are contrary to the law of partnership, as contained in article 2814 of the Civil Code, which is as follows:
“A stipulation that one of the contracting parties shall participate in the profits of a partnership, but shall not contribute to losses, is void, both as it regards the partners and third persons.”
The presumption of partnership because of a participation in the profits will yield to other provisions in the contract, and the evidence and circumstances surrounding the same. We say in Chaffraix & Agar v. Price, Hine & Tupper, 29 La. Ann. 176, 193:
“Participation in the profits will ordinarily establish the existence of a partnership, in the absence of all other opposing circumstances, between the participators in favor of third persons, but does not necessarily produce that effect. The fact that there is participation is presumptive proof that there is a partnership, but, like all presumptions,. is liable to be overcome by circumstances. The rule does not outweigh or overcome or demolish the circumstances, but the circumstances control the rule, and can repel the presumption created by it. The foundation of the rule is manifestly artificial. In adjusting' it to the circumstances of each case you do not dislocate any part of the legal edifice erected upon it, but adopt each of them to the other so as to produce symmetry. The circumstances of each case must guide the court, and, if in considering them the participation in the profits is clearly shown to be in the character of an agent or employe, the presumption of partnership is repelled.”
As the whole transaction under discussion was for the account of the Bluefields Company and not for the joint account of it and the defendant company, with the legal title to the property in the Bluefields Company alone, which company paid all the expenses and was to meet all losses, and as the Lala Company was to receive a commission for handling and selling the cargoes, and one-half of the profit, if any, the contract was simply one of agency.
There was judgment in favor of plaintiff and against the defendant company. As the defendant company has not appealed, the judgment is final as to it; and it (the defendant company) is not before us for any purpose.
Plaintiff has appealed from the judgment in favor of the members of the board of • directors of defendant company, and these parties only are before us. We shall therefore confine our consideration to the judgment in favor of said members of the board of directors of the defendant company, and against the plaintiff.
[5] Plaintiff impleaded the members of the board of directors of the defendant company and asked for a judgment in solido against them and said company, for the reason that said company, while acting in a fiduciary capacity, had diverted certain funds belonging to it, the proceeds of the sales of the bananas before referred to, with the knowledge and consent of said members of the board of directors.
T. J. Lala was president, Prank Prey was vice president, Joseph Cangelosi,’ William J. Salter, and Joseph La Nasa were directors of defendant company. Mr. O. A. Korndoffer was . secretary and general manager. The latter testified that the members of the board of directors, naming them, knew that the vessels of the defendant company were temporarily engaged in transporting bananas, at the time indicated, for and on account of the Bluefields Company; and that said bananas were the property of the Bluefields Company.
But the thing complained of by plaintiff is that the cargoes of bananas were sold partly for cash and partly on ten days’ drafts; *433 that these drafts had been discounted by the defendant company, through its officers, with the Germania Savings Bank; that the proceeds from the cash sales, as well as the proceeds from the drafts which had been discounted, were diverted by defendant company and its officers, and used by said company for its own purposes.
Evidence was offered, and received over defendants’ objections, to show that bananas had been sold to some of the defendant directors, or rather to the firms and a corporation with which they were severally connected; and that these bananas were not paid for in full; that said directors had previously loaned money to the defendant company; and that these loans had been discharged by the sale of said bananas to said firms and corporation. This testimony was not responsive to the allegations in plaintiff’s petition, and the objections thereto should have been sustained.
That the diversion of plaintiff’s property and funds, as set forth in the petition in the case, was done by and with the knowledge and consent of the president of the defendant company, Theodore J. Lala, is clearly proved. He signed the contract with plaintiff, accepting the employment of agent for his company; he received the money from the plaintiff for the purpose of buying the bananas; he, together with the manager of defendant company, sold said bananas “for account and risk of Bluefields Steamship Company,” as shown by the cargo lists found in evidence in the record; he received, or caused to be received, the cash from the sales made in the city of New Orleans; he received the drafts for sales.made to persons outside of the city of New Orleans; he discounted these drafts, the property of plaintiff, with the bank; and he and said manager used the proceeds thereof for the purpose of discharging the obligations of the defendant company to himself and to other creditors of that company. And, after this was done, he represented to plaintiff, or its officers, that the money from the cash sales had been used to pay the expenses of the vessels which brought the cargoes into port, and that the ten-day drafts which he had received for portions of the cargoes had been deposited in the bank for collection, and that the proceeds would be paid over to plaintiff immediately upon their collection — all of which was untrue.
But plaintiff has failed to prove that the other named defendants had any knowledge of, or connection with, any of these transactions, except Mr. Brey, vice president, who was at one or two conferences, after the bananas had been sold.
Plaintiff argues that defendants should be held for the knowledge which they should have had concerning the acts of the corporation of which they were directors, and which they could have learned had they examined the books and papers of the company. But the original contract was not entered upon the minutes of the board, and it was not authorized or ratified by the board; and the discount or sale of the drafts was not shown to have been communicated to the other defendants by Lala, or in any other way. Under these circumstances, we are of the opinion that the members of the board of directors, other than the president, cannot be held responsible for the diversion of the funds referred to.
None of the proceeds of the sale of plaintiff’s bananas were turned over to it, or went to pay the expenses of its business beyond $20. There was a clear diversion of the property and funds of the plaintiff company by the defendant company and its president; and they are both 'bound therefor. Civil Code, 2324; 2 Thompson on Corporations (6th Ed.) § 1300; Iowa Co. v. Southern Co. (C. C.) 30 Bed. 123; National Co. v. Leyland, 94 Fed. 507, 37 C. C. A. 372; Cahoone Co. v. Rubber Co. (C. C.) 45 Fed. 583.
*435 The report of the expert found in the record shows that plaintiff advanced $13,750.03; that there was a net loss of $3,009.34, which plaintiff obligated itself to meet. But there should be deducted from this last amount the commissions which were to have been paid to the defendant company, $716.31. There will be judgment against Theodore J. Lala for the difference, $11,460, less $20 expenses paid by defendant company.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed in so far as it is in favor of Theodore J. Lala.
It is further ordered that there be judgment in favor of the Bluefields Fruit & Steamship Company against Theodore ,T. Lala in the sum of $11,440, with costs in both courts. Any amount or amounts received by plaintiff from the defendant company, or the receiver thereof, is to be credited upon this judgment.
It is further ordered that the judgment appealed from is affirmed in all other respects.